**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VINCENT HALLMAN,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:10-2531** |
| **v.** | : | **(CALDWELL, D.J.)** |
| | | **(MANNION, M.J.)** |
| **ROBERT STITT, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**[1]

Pending before the court is the defendants' motion to dismiss the plaintiff's amended complaint. (Doc. No. 17). Based upon a review of the motion and related materials, it is recommended that the motion be granted in part and denied in part as more fully discussed below.

By way of relevant procedural background, on December 14, 2010, the plaintiff, a former inmate at the State Correctional Institution, Huntingdon, ("SCI-Huntingdon")[2], Pennsylvania, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983, (Doc. No. 1), along with an application to proceed in forma pauperis, (Doc. No. 2), and a prisoner financial authorization form, (Doc. No. 4). A financial administrative order was issued on December

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

[2]The plaintiff is currently confined at the State Correctional Institution, Frackville, Pennsylvania.

15, 2010. (Doc. No. 5). On February 3, 2011, the plaintiff filed an amended complaint with exhibits. (Doc. No. 8). The plaintiff filed additional exhibits in support of his amended complaint on February 15, 2011, (Doc. No. 10), and February 24, 2011, (Doc. No. 11).

On May 20, 2011, the defendants filed the instant motion to dismiss the plaintiff's amended complaint, (Doc. No. 17)[3]. After having been granted extensions of time to do so, the defendants filed a brief in support of the motion on June 22, 2011. (Doc. No. 23). On June 29, 2011, the plaintiff filed a brief in opposition to the defendants' motion to dismiss. (Doc. No. 24).

The defendants have submitted the instant motion to dismiss the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of a complaint. In deciding a motion to dismiss, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The court also need not accept legal conclusions set forth as factual

---

[3]This motion seeks only partial dismissal of the plaintiff's claims.

allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 556 (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atlantic Corp. v. Twombly, supra and providing further guidance on the standard set forth therein).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

The plaintiff sets forth the following allegations in his complaint, which are taken as true for purposes of considering the instant motion to dismiss. On January 13, 2010, the plaintiff approached the guard desk to get a cash

slip signed to mail a legal package. The plaintiff was told by defendant Stitt to re-open the package which had already been sealed. The plaintiff said never mind and turned to go back to his cell. He was directed to come back to the guard desk. At this time, the plaintiff referred defendant Stitt to the mail policy that required mail to be re-opened only when there was a security issue or if the inmate was placed on a restricted list by security, which the plaintiff was not. Defendant Stitt then bolted from his chair and began violently pushing the plaintiff which resulted in the plaintiff suffering a busted lip. After being pushed three times, the plaintiff "engaged in a fight" with defendant Stitt which resulted in the plaintiff also suffering a torn left bicep muscle.

As a result of the altercation with defendant Stitt, the plaintiff alleges that security officials, including defendant Morrison, "put in motion a 'campaign of harassment'" against the plaintiff, including the issuance of false misconduct reports, assaults upon the plaintiff, tampering with his mail and legal property, denying him outside exercise, and subjecting him to psychological torture.

The plaintiff alleges that defendant Morrison, along with defendants Wakefield and Lawler, issued or orchestrated the issuance of false misconduct reports so that the plaintiff could not be transferred because, in order to be transferred, an inmate must be misconduct free.

In each instance when the plaintiff was issued a misconduct report, he

4

alleges that defendant Mitchell denied him due process by denying him the right to call witnesses, rendering him unable to present evidence and respond to the charges. In addition, in some instances, the plaintiff alleges that defendant Mitchell refused to allow the plaintiff to attend the misconduct hearing.

The plaintiff alleges that defendants Smeal, Barnacle, Morrison, Wakefield, Lawler and Beard acted with deliberate indifference "by some policy or another" in failing to ensure proper investigation, documentation and disposition of prisoner grievances against staff. Pursuant to this policy, prisoners who have assaults on corrections officers are not separated which subjects prisoners to retaliation from other staff members. The plaintiff alleges that he requested and was denied a separation from defendants Morrison, Wakefield and Cates.

The plaintiff alleges that defendants Beard, Smeal, Barnacle, Lawler, Wakefield and Morrison all have the authority to establish policy for SCI-Huntingdon and that all of these defendants were deliberately indifferent with respect to the training and supervision of prison personnel. In addition, the plaintiff alleges that these defendants had a policy of failing to take appropriate action with respect to correctional officers who posed a threat to the health and safety of the plaintiff.

The plaintiff alleges that defendants Beard, Smeal, Barnacle, Lawler

5

and Wakefield violated his rights by sending complaints filed by the plaintiff to the Office of Professional Responsibility for investigation when this agency works directly with the DOC resulting in a "cover up." According to the plaintiff, this "cover up" of his complaints sent a message of encouragement to subordinates.

On May 28, 2010, the plaintiff alleges that he gave defendant Cates various of his personal clothing items in preparation of going to the RHU yard. Defendant Cates "thrusted" the items back to the plaintiff through the food aperture and indicated that the plaintiff was not going to the yard because he assaulted staff and because he had his jumpsuit sleeve rolled up. The plaintiff asked to speak with the RHU lieutenant at which time defendant Cates slammed the food lid of the aperture on the plaintiff's right thumb. The plaintiff yelled to notify defendant Cates that his thumb was caught, but defendant Cates "coldly walked away." Other inmates kicked their doors to bring someone's attention to the plaintiff's situation. Eventually, a sergeant released the plaintiff's thumb. The plaintiff was provided medical attention, the incident was logged, and pictures were taken.

On or about June 26, 2010, defendant Morrison obstructed the plaintiff's attempt to file a grievance regarding the use of excessive force, racial slurs and threats by guards in the RHU. Defendant Morrison then issued the plaintiff a misconduct charging him with lying to employees. The plaintiff

6

claims that defendant Morrison's actions were part of a conspiracy to silence the plaintiff from reporting abuse.

Also on June 26, 2010, the plaintiff attempted to take his life in the RHU. Under the guise of attempting to save the plaintiff, unnamed RHU guards punched, choked and physically harmed the plaintiff. In addition, the plaintiff was injected with a psychotropic drug against institution policy. Since this injection, the plaintiff suffers dehydration, slurred speech, nightmares, cold sweats and depression. The plaintiff has treated with the prison psychologist who informed him that more psychotropic medication would remedy his symptoms.

On August 3, 2010, defendant Cates terminated the plaintiff's yard time for returning a greeting to another inmate in passing on the way to the yard. At this time, defendant Cates grabbed the plaintiff by his left arm, while defendant Williams grabbed the plaintiff by his right arm, digging their nails into his arms and turning the plaintiff's body around causing him pain. The plaintiff was then dragged back to his cell.

On December 10, 2010, after mealtime, the plaintiff put his tray on the aperture. When the plaintiff put his cup on the aperture, defendant Cates deliberately slammed the lid catching the plaintiff's finger and then walked away.

Based upon the above allegations, the plaintiff is seeking declaratory

7

and injunctive relief[4], as well as compensatory and punitive damages.

In their motion to dismiss, the defendants initially argue that any claims by the plaintiff against the defendants in their official capacity are barred by the Eleventh Amendment. (Doc. No. 23, pp. 8-9).

Federal courts can not consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241 (1985); Edelman v. Jordan, 415 U.S. 651, 662 (1974). This immunity extends to suits asserting civil rights violations where the state is named as a defendant. Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir.1981). Eleventh Amendment immunity also extends to individual state employees sued in their official capacities "because 'official-capacity suits generally represent only another way of pleading an action' against the state." Betts v. New Castle Youth Dev. Ctr.,

---

[4]Generally, a prisoner's transfer from a prison moots his claims for injunctive or declaratory relief because he is no longer subject to the conditions he alleges are unconstitutional. Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993); see also Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981) ("[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge.").

In this case, all of the events complained of by the plaintiff took place at SCI-Huntingdon. Since the filing of the instant action, the plaintiff has been transferred to SCI-Frackville. There is nothing in the record to suggest that it is likely that he will return to SCI-Huntingdon in the foreseeable future. Consequently, the plaintiff's request in his complaint for declaratory and injunctive relief should be dismissed as moot. See Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa. 1998) ("Fortes' transfer to another institution moots any claims for injunctive or declaratory relief.").

621 F.3d 249, 254 (3d Cir. 2010) (quoted case omitted). "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." Chittister v. Dep't. of Community & Economic Dev., 226 F.3d 223, 226 (3d Cir.2000). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. "By statute Pennsylvania has specifically withheld consent [to be sued]." Laskaris, 661 F.2d at 25 (citing Pa. Cons.Stat. Ann. §§8521(b)). Additionally, §1983 does not abrogate the Eleventh Amendment. Quern v. Jordan, 440 U.S. 332, 345 (1979). Further, an essential element of any claim under §1983 is that the alleged wrongdoing was committed by a "person." 42 U.S.C. §1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under §1983." Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

In his brief in opposition to the defendants' motion, the plaintiff responds that he is not proceeding directly against the state or a state agency and should be permitted to proceed against the defendants in their official capacity. However, as discussed above, an action against the defendants in their official capacity is the equivalent of an action against the state. As such, to the extent that the plaintiff is attempting to proceed against the defendants

in their official capacity, the defendants' motion should be granted and the plaintiff's complaint should be dismissed.

The defendants also argue that the plaintiff has failed to allege sufficient personal involvement on behalf of defendants Beard, Barnacle, Wakefield, Morrison, and Lawler in order to hold them liable pursuant to §1983. (Doc. No. 23, pp. 9-12).

In considering the defendants' argument, defendant Beard is the former Secretary of the Department of Corrections; defendant Barnacle is the OPR Director; defendant Lawler is the former Superintendent at SCI-Huntingdon; defendant Wakefield is a Major at SCI-Huntingdon; and defendant Morrison is a Lieutenant at SCI-Huntingdon. The plaintiff alleges that these defendants acted with deliberate indifference through their policies and that such policies resulted in a failure to ensure that their subordinates were properly trained or supervised. The plaintiff also alleges that defendants Beard, Lawler and Wakefield conspired to "cover up" the actions of their subordinates. According to the plaintiff, he made the above defendants aware of the violations by their subordinates through letters to their offices after violations occurred.

With respect to policy claims like the plaintiff brings against the moving defendants, the courts have fashioned an exacting four-part test based upon the reasoning of City of Canton v. Harris, 489 U.S. 378 (1989), for supervisory liability on an Eighth Amendment claim for failure to train or supervise. Under

10

this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (3) the injury resulted from the policy or practice." Beers–Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989)).

Pursuant to this test, one way which a plaintiff can show supervisory liability "is by showing that the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries. Id. (internal quotation marks and citations omitted). In other cases, this showing may be made where "the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, and of indifference to it." Id. (internal quotation marks and citations omitted). The focus of the test it to identify indicia of subjective knowledge of the risk posed to the inmate, not to determine the objective reasonableness of the policy. In fact, the official must be actually aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. Id. at 133.

Furthermore, claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a

prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Liability under §1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). See also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). The mere assertion "that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did" is insufficient to establish liability. Sample v. Diecks, 885 F.2d at 1118. Likewise, a supervisor's mere failure to train, supervise or discipline subordinate officers does not state a basis for a §1983 claim against the supervisor absent proof of direct participation by the superior in some unlawful conduct. Mobley v. City

of Atlantic City Police Dept., 2000 WL 363692 at *3 (D.N.J. March 30, 2000)[5]
(citing Brown v. Grabowski, 922 F.2d 1097, 1119–20 (3d Cir.1990)).

In this case, to the extent that the plaintiff attempts to hold the above officials personally culpable based simply upon their supervisory status, his complaint runs afoul of the settled rule set forth above that civil rights liability may not be based solely upon notions of *respondeat superior*.

Moreover, the plaintiff's conclusory allegations that these defendants acted pursuant to "some policy or another" or that they failed to train or supervise their subordinates, without more, is insufficient to state a claim against these defendants pursuant to §1983.

Nor can the plaintiff convert his displeasure with these officials' investigation of, or response to, his grievances into an infraction of constitutional dimension. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137–138; Speight v. Sims, 283 Fed.Appx. 880 (3d. Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner ."). Consequently, dissatisfaction with response to an inmate's grievances or requests for investigation does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed.Appx. 924 (3d

---

[5]For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.

Cir. 2005) (involvement in post-incident grievance process not a basis for §1983 liability); Pryor–El v. Kelly, 892 F.Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, 2007 WL 4460617, at *5 (W.D.Pa. Dec.19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). The defendants cannot be sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d at 1207. These basic principles apply here, and compel the dismissal of the plaintiff's claims against the above defendants, who may not be held liable simply because they were prison supervisors when these events occurred or were alleged to have failed "to take corrective action when grievances or investigations were referred to them." Id.

Further, concerning the allegations against defendant Morrison, the defendants argue that the plaintiff's conclusory allegations that he condoned or acquiesced in the actions of others is not sufficient to withstand a motion to dismiss. Without any indication of direct personal involvement in a violation of the plaintiff's rights, for the reasons discussed above, the court agrees that such conclusory allegations are insufficient. Therefore, the defendants' motion to dismiss should be granted on this basis.

In addition, the defendants argue that the plaintiff's conclusory allegations of defendant Morrison's participation in a conspiracy are not sufficient to withstand a motion to dismiss. In his brief in opposition to the defendants' motion, he argues that his "conclusory allegations" set forth a claim of conspiracy against defendant Morrison because he has alleged that defendant Morrison ". . . concurred, agreed, plotted, planned and conspired with defendant Mitchell, which does tend to show a meeting of the minds in a concerted activity . . ."

In considering the plaintiff's conspiracy claim, conclusory and vague allegations will not support a conspiracy claim, see Tindell v. Beard, 351 Fed.Appx. 591, 594 (3d Cir. 2009) (per curiam) (nonprecedential) (citing Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)); Adams v. Teamsters Local 115, 214 Fed.Appx. 167, 175 (3d Cir. 2007) (nonprecedential). A plaintiff must allege with particularity and present facts which show that the alleged conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive the plaintiff of a protected federal rights. See D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992). The plaintiff has admittedly presented only conclusory allegations of a conspiracy which are insufficient. Therefore, any claim by the plaintiff of a conspiracy involving defendant Morrison should be dismissed.

15

Next, the defendants argue that the plaintiff's due process claim against defendant Morrison for hindering his access to the grievance process fails to state a claim because the plaintiff has no protected interest in the grievance process. (Doc. No. 23, p. 13). The plaintiff responds that defendant Morrison obstructed the grievance he filed by not considering the plaintiff's witnesses and instead issuing the plaintiff a misconduct. As discussed above, the court agrees that prisoners do not have a constitutionally protected right to a grievance procedure. See, e.g., Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) ("I do not suggest that the [Bureau of Prisons' grievance] procedures are constitutionally mandated."); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by" the Constitution); Pressley v. Johnson, 268 Fed.Appx. 181, 184 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)). Therefore, to the extent that the plaintiff argues that defendant Morrison obstructed his filing of a grievance, the defendants' motion to dismiss should be granted.

Finally, the defendants argue that the plaintiff's Eighth Amendment claim against defendant Cates for the plaintiff's May 28, 2010, injury is legally insufficient where the facts alleged do not indicate deliberate indifference.

Here, the defendants argue that the plaintiff gives no indication that defendant Cates was aware that the plaintiff's hand was still in the aperture at the time it was shut and, in fact, indicates that defendant Cates was completely unaware that the plaintiff's thumb had been caught in the door. (Doc. No. 23, pp. 13-14).

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. Hudson v. McMillian, 503 U.S. 1, 7 (1992). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). The absence of any injury, or evidence of only *de minimis* injuries, is "relevant to the Eighth Amendment inquiry, but does not end it." Hudson, 503 U.S. at 7.

In reviewing the plaintiff's complaint, it is clear that the plaintiff is

17

alleging a pattern of excessive force by defendant Cates against him. Moreover, the claims against defendant Cates with respect to the May 28, 2010, incident are strikingly similar to the claims against defendant Cates with respect to the December 10, 2010, in which the plaintiff claims the actions of defendant Cates were deliberate. In addition, the plaintiff's allegations with respect to the May 28, 2010, incident do not indicate that defendant Cates was "completely unaware" that the plaintiff's hand was in the aperture, but that defendant Cates "coldly walked away," while the plaintiff was yelling that his hand was caught in the aperture. In light of these facts and considering the plaintiff's *pro se* status, at this stage of the proceedings, the defendants' motion to dismiss should be denied on this basis.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:** the defendants' motion to dismiss the plaintiff's complaint, **(Doc. No. 17)**, be **GRANTED IN PART AND DENIED IN PART** as more fully discussed above.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:  February 13, 2012**

O:\shared\REPORTS\2010 Reports\10-2531-01.wpd