**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VINCENT HALLMAN,** | : | Civil No. 1:10-CV-2531 |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Caldwell)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ROBERT STITT, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

In this case we most assuredly do not write upon a blank slate.  Quite the contrary, as so often happens, the past history of this litigation now largely defines the future course of this lawsuit.

This is a *pro se* inmate civil rights action.  The plaintiff, a state inmate, has alleged that the two remaining correctional defendants, Correctional Officers Stitt and Cates, violated his Eighth Amendment right to be free from cruel and unusual punishment when they allegedly used excessive force against Hallman in the course of two separate encounters which took place on January 13, 2010 and May 28, 2010.

These two excessive force claim have previously been the subject of a summary judgment motion filed by the defendants.  (Doc. 67.)  That motion was

denied by the district court, (Doc. 88.), adopting the Report and Recommendation of then-Magistrate Judge Mannion. (Doc. 83.) In his Report and Recommendation, Judge Mannion detailed the conflicting factual background relating to these two episodes, describing the January 13, 2010, incident in the following terms:

> [T]he plaintiff's amended complaint alleges that on January 13, 2010, the plaintiff approached the guard desk to get a cash slip signed to mail a legal package. He alleges that he was told by defendant Stitt to re-open the package which had already been sealed. The plaintiff alleges that he told defendant Stitt "never mind" and turned to go back to his cell. According to the plaintiff, he was directed to come back to the guard desk, at which time he referred defendant Stitt to the mail policy that required mail to be re-opened only when there was a security issue or if the inmate was placed on a restricted list by security, which the plaintiff was not. The plaintiff alleges that defendant Stitt then bolted from his chair and began violently pushing the plaintiff which resulted in the plaintiff suffering a busted lip. After being pushed three times, the plaintiff alleges that he "engaged in a fight" with defendant Stitt which resulted in the plaintiff also suffering a torn left bicep muscle. Based upon these allegations, the plaintiff brings an excessive force claim against defendant Stitt.

(Doc. 83, p. 5.)

With respect to this incident, Judge Mannion noted that Hallman was facing state assault charges arising out of this fight with Officer Stitt. Accordingly, Judge Mannion recommended that consideration of a summary judgment motion with respect to defendant Stitt be stayed pending completion of the criminal prosecution of Hallman. (Id.) The district court adopted this recommendation, and stayed further

2

consideration of any summary judgment motion with respect to defendant Stitt. (Doc. 88.)

As for the May 28, 2010, incident involving defendant Cates, Judge Mannion described the conflicting evidence, cast in a light most favorable to Hallman, in the following terms:

> [T]he plaintiff alleges that on May 28, 2010, he gave defendant Cates various of his personal clothing items in preparation of going to the RHU yard.  The plaintiff alleges that defendant Cates "thrusted" the items back to the plaintiff through the food aperture and indicated that the plaintiff was not going to the yard because he assaulted staff and because he had his jumpsuit sleeve rolled up.  When the plaintiff asked to speak with the RHU lieutenant, he alleges that defendant Cates slammed the food lid of the aperture on the plaintiff's right thumb.  The plaintiff alleges that he yelled to notify defendant Cates that his thumb was caught, but defendant Cates "coldly walked away."  According to the plaintiff, other inmates kicked their doors to bring someone's attention to the plaintiff's situation.  Eventually, he alleges that a sergeant released his thumb and he was provided medical attention, the incident was logged, and pictures were taken.

(Doc. 83, p. 14.)

Citing conflicts in the evidence, including affidavits from other inmates who attested that "defendant Cates repeatedly slammed the plaintiff's hand, wrist and/or arm in the aperture while making statements such as 'That's what happens when you assault a Huntington guard.' " (id., p. 17)  Judge Mannion recommended that this motion for summary judgment be denied with respect to Cates.  The district court also

adopted this recommendation, finding that disputed, material issues of fact precluded the entry of judgment as a matter of law in favor of defendant Cates. (Doc. 88.)

Hallman's state criminal proceedings arising out of his affray with Officer Stitt came to a close in April, 2014, when Hallman entered a plea of *nolo contendere* to an assault charge in this criminal case. (Doc. 114.) With the termination of this state criminal case, the stay previously entered by the district court in this matter was lifted, and the defendants renewed their summary judgment motion. (Doc. 124.)

In this motion, the defendants first argue that, as a result of Hallman's no contest plea on state assault charges, Officer Stitt is entitled to judgment in his favor as matter of law on this excessive force claim. (Doc. 125.) The defendants also assert that on the undisputed facts relating to these two incidents they are entitled to judgment in their favor as a matter of law on Hallman's excessive force claims against both defendants Stitt and Cates. While they make this argument the defendants candidly acknowledge that this Court has previously rejected this precise claim and has ruled that disputed issues of fact precluded summary judgment in favor of defendant Cates. (Id.) Finally, the defendants contend that they are entitled to summary judgment since defendants Stitt and Cates should be shielded from personal liability by qualified immunity. (Id.)

This motion is fully briefed by the parties, (Docs. 125, 129.), and is, therefore, ripe for resolution.  With the scope of our discretion confined both by the prior rulings of this Court, which constitute the law of the case, and by the prior precedential rulings of the court of appeals, which directly address the defenses raised in this motion, it is recommended that this motion be denied.

## II.   Discussion

### A.   Summary Judgment–Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).  For purposes of Rule 56, a fact is material if proof of its existence of nonexistence might affect the outcome of the suit under the applicable

substantive law.  Haybarger v. Laurence Cnty. Adult Prob. & Parole, 667 F.3d 408, 412 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Id. (quoting Anderson, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof.  See Celotex v. Catrett, 477 U.S. 317, 323 (1986).  Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings.  See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56(c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all

6

reasonable inferences in the light most favorable to the non-moving party, <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.  <u>Id.</u>  Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  <u>Id.</u> at 252; <u>see also</u> <u>Big Apple BMW</u>, 974 F.2d at 1363.  In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

<u>Id.</u>  In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); <u>NAACP v. North Hudson Reg'l Fire & Rescue</u>, 665 F.3d 464, 476 (3d Cir. 2011).

### B.   Constitutional Standards Governing Eighth Amendment Claims

In conducting this legal analysis we must also be mindful of the constitutional standards which govern Eighth Amendment excessive force claims, since the gravamen of Hallman's complaint is that prison officials violated his rights under the Eighth Amendment to the United States Constitution through their use of excessive force against him on January 13 and May 28, 2010.  These Eighth Amendment claims are governed by the same overarching and animating constitutional benchmarks.  As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment."  However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny."  Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Id. (citation and internal quotations omitted).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind."  Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections.  Id. at 298, 111 S.Ct. 2321.  If not, our inquiry is at an end.

> However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000).

Thus, Eighth Amendment excessive force claims entail a showing of some subjective intent to injure. In an excessive force case, where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley [v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

Since the keystone to analysis of an Eighth Amendment excessive force claim entails issues of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm, Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)–excessive force claims often turn on factual disputes which cannot be resolved as a matter of law. As the United States Court of Appeals for the Third Circuit has aptly observed:

> [T]he Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. See Whitley v. Albers, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Summary judgment in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322, 106 S.Ct. 1078; see also Sampley v. Ruettgers, 704 F.2d 491, 495 (10th Cir.1983) (holding that wantonness exists when a prison guard intends to harm an inmate).

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).

Consistent with this fact-bound approach to litigation of these claims, there are several factual considerations that a court must examine in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Id. at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Graham v. Connor, 490 U.S. 386, 396-7 (1989).  Moreover, in the context of prison

excessive force claims, in determining "whether force was applied in a good-faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm,"

Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate]

has established at most that prison officials over-reacted to the disturbance that he

caused. . . , any such over-reaction would still fall short of supporting a finding that

prison officials acted 'maliciously and sadistically to cause harm.'"   Fuentes v.

Wagner, 206 F.3d 335, 346 (3d Cir. 2000).

### C.   Hallman's No-Contest Plea to State Assault Charges Does Not Preclude Him From Pursuing an Excessive Force Claim

At the outset, in their summary judgment motion the defendants assert that

Hallman's no-contest plea on related assault charges involving Officer Stitt in state

court now precludes the plaintiff as a matter of law from maintaining an Eighth

Amendment excessive force claim against this correctional officer.

However, the difficulty with this argument is that this path has been foreclosed

by the United States Court of Appeals for the Third Circuit.  In fact, the court of

appeals has examined this precise issue in the context of the Supreme Court's rule in

Heck v. Humphrey, 512 U.S. 477 (1994), which forbids civil rights plaintiffs from

bringing civil lawsuits against government officials which would necessarily imply

11

that a prior state conviction was invalid.  Considering the application of this doctrine

to an inmate excessive force claim made by a plaintiff, like Hallman, who was

previously convicted of assaulting the correctional staff that allegedly used excessive

force against him, the court of appeals held that the prior assault conviction is not an

absolute legal bar to an excessive force claim, stating:

> It is conceivable that a law enforcement officer, acting within the scope
> of his official duties, may use force that is excessive in effectuating a
> lawful arrest.  See Nelson v. Jashurek, 109 F.3d 142, 145–146 (3d.
> Cir.1997).  In Nelson, the plaintiff had been convicted in state court of
> resisting arrest.  Under Pennsylvania law, to convict the plaintiff, the
> jury had to find that the officer involved "was justified in using
> 'substantial force.' "  Nelson, 109 F.3d at 145.  In reversing the district
> court's grant of summary judgment, we determined that "the fact that
> [the defendant] was justified in using 'substantial force' to arrest Nelson
> does not mean that he was justified in using an excessive amount of
> force and thus does not mean that his actions in effectuating the arrest
> necessarily were objectively unreasonable."  Id. . . . .  Similarly, [a
> prisoner-plaintiff's] convictions for resisting arrest and assaulting
> officers would not be inconsistent with a holding that the officers,
> during a lawful arrest, used excessive (or unlawful) force in response to
> his own unlawful actions.  We are not suggesting that[a prisoner-
> plaintiff] will be able to recover damages, only that the rationale of Heck
> does not present an absolute bar to his claim.  In order to succeed on his
> excessive force claim, [the prisoner-plaintiff] must still show that the
> officers' actions were unreasonable in light of the circumstances . . . .
> See Kopec v. Tate, 361 F.3d 772, 776–77 (3d Cir.2004).

Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008).  See, e.g., Garrison v. Porch,

376 F.App'x 274 (3d Cir. 2009); Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997).

Given this settled caselaw, the defendants simply may not maintain that Hallman's prior *nolo contendere* plea and conviction on state assault charges bars him as a matter of law from pursuing this excessive force claim since it is conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive while lawfully detaining the plaintiff.  See  Nelson v. Jashurek, 109 F.3d 142, 145–146 (3d Cir.1997).  Indeed, the court of appeals has not only held that this *nolo contendere* plea is not dispositive as a matter of law in an excessive force case, Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008); it has also held that such a *nolo contendere* plea is not even admissible in an excessive force lawsuit brought by a prisoner against correctional staff.  See  Sharif v. Picone, 740 F.3d 263, 270 (3d Cir. 2014).  In light of these controlling appellate court rulings, we should decline defendant Stitt's invitation to dismiss this action based upon Hallman's no contest plea to assault charges in state court.  Nonetheless to prevail on such a claim, Hallman must still meet an exacting threshold.  "In order to succeed on his excessive force claim, [the prisoner-plaintiff] must still show that the officers' actions were unreasonable in light of the circumstances . . . .  See Kopec v. Tate, 361 F.3d 772, 776–77 (3d Cir.2004)."  Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008).

**D.      Factual Disputes, and the Law of the Case Doctrine, Combine
to Preclude Summary Judgment in Favor of Defendants Stitt
and Cates on the merits of this Eighth Amendment Claim**

The defendants have also moved for summary judgment on the merits of these

Eighth Amendment claims, arguing that no rational fact-finder could find in favor of

Hallman.  (Doc. 125.)  While the defendants have advanced this argument, they also

candidly acknowledged that this precise claim was previously presented to the Court

with respect to defendant Cates in a prior summary judgment motion, and was

rejected by this Court, which found that there were disputed material issues of fact

which precluded entry of summary judgment on behalf of defendant Cates.

On these facts, we find that there are two obstacles to the defendants' current

summary judgment motion.  First, with respect to defendant Cates, this motion is

barred by the law of the case doctrine.  "Under the law of the case doctrine, once an

issue is decided, it will not be re-litigated in the same case, except in unusual

circumstances. . . . .  The purpose of this doctrine is to promote the 'judicial system's

interest in finality and in efficient administration.  Todd & Co., Inc. v. S.E.C., 637

F.2d 154, 156 (3d Cir. 1980).' "  Hayman Cash Register Co. v. Sarokin, 669 F.2d

162, 165 (3d Cir. 1981).  The contours of this settled doctrine were recently described

by the United States Court of Appeals for the Third Circuit in the following terms:

14

In <u>Arizona v. California</u>, 460 U.S. 605 (1983), the Supreme Court noted:

> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept.  As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

<u>Id</u>. at 618 (citations omitted).  The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"

<u>In re Pharmacy Benefit Managers Antitrust Litigation</u>, 582 F.3d 432, 439 (3d Cir.2009)(reversing arbitration order in antitrust case on law-of-the-case grounds)(citations omitted).  It is clear that "[t]he ... doctrine does not restrict a court's power but rather governs its exercise of discretion." <u>Id</u>.  (<u>quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc.</u>, 123 F.3d 111, 116 (3d Cir.1997)) (citations omitted).  In exercising that discretion, however, courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." <u>Id</u>. (<u>quoting Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 816 (1988)).  In addition to that narrow class of cases where the prior ruling was manifestly unjust, the type of "extraordinary circumstances" that warrant a court's exercising its discretion in favor of reconsidering an issue decided earlier in the course of litigation typically exist only where (1) new evidence is available, or (2) a

supervening new law has been announced. Id. (citing, Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997)).

In this case, with respect to defendant Cates, there is no new material evidence presented which so fundamentally changes the factual landscape of this dispute that it eliminates any disputed issues of fact. Moreover, while the defendants cite a supervening appellate court decision, Hardwick v. Packer, 546 F. App'x 73, 76 (3d Cir. 2013), that appellate court decision did not announce a new rule of law, as required by the law of the case doctrine. Instead, it simply applied longstanding legal precepts to an excessive force claim that arose in a very different factual context. Moreover, notably, in Hardwick the prisoner-plaintiff "did not come forward with rebuttal evidence to show that the force applied by [the defendant] was not applied in a good faith effort to maintain or restore discipline, or was applied maliciously and sadistically to cause harm." Hardwick v. Packer, 546 F. App'x 73, 76-77 (3d Cir. 2013). In stark contrast, in this case Hallman previously did come forward with some evidence which presented a factual dispute regarding whether this force was applied maliciously. Specifically, Hallman presented affidavits from other inmates who attested that "defendant Cates repeatedly slammed the plaintiff's hand, wrist and/or arm in the aperture while making statements such as 'That's what happens when you assault a Huntington guard.'" (Doc. 83, p. 17.) Since there are no new material facts

which fundamentally alter the quantum of proof here, and there has been not supervening change in the legal paradigm used to assess this claim, the law of the case doctrine continues to apply here and bars further consideration of this claim at this time.

Furthermore, we find that genuine disputes of material fact also preclude summary judgment in favor of the defendants. Simply put, as to these defendants, the record is replete with sharply drawn disputes relating to material facts concerning the nature of the encounters between Hallman and the officers; the degree of force employed in the encounter; the identity of the aggressors in the encounter; and the subjective motivations of the officers as they employed force against Hallman. While Hallman ultimately must carry the burden of proof on all of these factual issues, and must demonstrate that the officers did not use force in a good-faith effort to maintain or restore discipline, but rather applied it maliciously and sadistically to cause harm, Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), in this case that determination is a factual one, which cannot be resolved on summary judgment but rather must await trial. See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).[1]

---

[1]On this score we note that defendants have cited the relatively minor nature of Hallman's injuries in support of their motion for summary judgment, arguing that these minor injuries establish as a matter of law that no excessive force was used. While we agree that the degree of these injuries is a factual matter which is often relevant at trial, we do not believe that it warrants a judgment as a matter of

**E.     Factual Disputes also Preclude Summary Judgment on Qualified Immunity in this Case**

Finally, defendants argue that they are entitled to summary judgment in their favor because their actions were shielded by qualified immunity.  However, this argument is hobbled by the same basic consideration which prevents us from reaching the merits of these Eighth Amendment claims as a matter of law.  In this case, disputed material issues of fact prevent us from reaching a judgment as a matter of law on the question of qualified immunity.

To be sure, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009).

---

law since in assessing the use of force, "the extent of injury suffered by [the] inmate is one factor," but a plaintiff can establish an Eighth Amendment excessive force claim even without showing "serious injury."  Hudson, 503 U.S. at 7; see also Wilkins v. Gaddy, 130 S. Ct. 1175, 1177, 1178 (2010) (per curiam) (rejecting Fourth Circuit's requirement of "a showing of significant injury in order to state an excessive force claim," and reiterating "Hudson's direction to decide excessive force claims based on the nature of the force rather than the extent of the injury"). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . .  This is true whether or not significant injury is evident." Id. at 9.  Although "the Eighth Amendment does not protect an inmate against an objectively *de minimis* use of force, .... *de minimis* injuries do not necessarily establish *de minimis* force." Smith v. Mensinger, 293 F.3d 641, 648-49 (3d Cir. 2002).

This doctrine, known as qualified immunity, provides officials performing

discretionary functions not only defense to liability, but also "immunity from suit."

Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.)

(citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194,

201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d

199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the

defendant did not actually commit a constitutional violation, then the court must find

in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have

committed a constitutional violation, the court must undertake a second, related

inquiry to assess whether the constitutional right in question was "clearly established"

at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-

02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity."  <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."  <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

"[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)."  <u>Grant v. City of Pittsburgh</u>, 98 F.3d 116, 122 (3d Cir. 1996).  Moreover, in excessive force cases where that factual record reveals disputed material issues of

fact regarding what the officer could reasonably believed to have been true at the time that force was applied, we are cautioned by the court of appeals that "the jury 'determines disputed historical facts material to the qualified immunity question[,]' and . . . th[e] 'District Courts may use special interrogatories to allow juries to perform this function,' id. (citing Curley I, 298 F.3d at 279) [but it has been] emphasized that '[t]he court must make the ultimate determination on the availability of qualified immunity as a matter of law.' Id" Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007).  Indeed, this principle applies with particular force to excessive force claims, where any qualified immunity or merits assessment entails an analysis of multiple, discrete factual considerations.  See Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007).

In the instant case, we have previously found that the resolution of these particular excessive force claims entails consideration of numerous disputed issues of fact.  This finding, in turn, compels us to deny the defendants' motion for summary judgment on qualified immunity grounds, and recommend instead that the court defer this legal issue for trial when a " jury [can] 'determine[] disputed historical facts material to the qualified immunity question[,]' and . . . th[e] 'District Courts may use special interrogatories to allow juries to perform this function.' " Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007).

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 124.) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of August, 2014.


<u>*S/Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge